**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IDALIS LANDRAU-FRAGOSO,<br><br>**Plaintiff,**<br><br>**v.**<br><br>EMERGENCY PHYSICIAN PROVIDERS, LLC, ET AL,<br><br>**Defendants.** | **CIVIL NO. 25-1503 (RAM)** |

**OPINION AND ORDER**

Pending before the Court is Co-Defendants Emergency Physician Providers, LLC ("EPP") and The Medical Protective Company's ("MedPro"), collectively "Defendants", *Motion to Dismiss Plaintiff's EMTALA Causes of Action and Memorandum of Law in Support Thereof* (the "*Motion to Dismiss*") (Docket No. 51). For the below-stated reasons, the Court hereby **GRANTS** Defendants' *Motion to Dismiss*.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On March 14, 2023, Mrs. Maria Fragoso ("Mrs. Fragoso") had an angioplasty on her right leg and was discharged to her home in stable condition. (Docket No. 5 ¶ 33). On March 15, 2023, Mrs. Fragoso was taken by ambulance to the emergency room of Hospital Pavia in Santurce, Puerto Rico ("Hospital Pavia") because she was

[1] The following statement of relevant facts is derived from the well-plead allegations of the Operative Complaint at Docket No. 5.

suffering from hematemesis and abdominal pain. Id. ¶ 34. Mrs. Fragoso was received at Hospital Pavia's Emergency Department at approximately 3:00 p.m. by a triage nurse. Id. ¶ 35. At all relevant times, EPP oversaw Hospital Pavia's Emergency Department, and its subcontractors and/or employees were on duty at said Emergency Room. Id. ¶ 45. Ms. Fragoso was exhibiting signs that required immediate medical intervention. Id. ¶¶ 35-36. However, Mrs. Fragoso was left unattended by the hospital's personnel on her stretcher in the hallway for approximately four (4) hours without medical evaluation, testing, medication or treatment. Id. ¶¶ 37-41.

At approximately 7:17 p.m., Mrs. Fragoso was evaluated by emergency physician Dr. Ramirez, who ordered various tests. Id. ¶¶ 42-44. At 9:30 p.m., Dr. Ramirez indicated that Mrs. Fragoso's hemoglobin level was 5.9 g/dL, compatible with symptomatic anemia, and required a transfusion. Id. ¶ 51. Hospital nurses made various calls to the Blood Bank to enquire as to the status of the blood for Mrs. Fragoso's transfusion. Id. ¶ 52-53. At 12:30 a.m. of March 16, 2023, the nurse began preparing the blood transfusion. Id. ¶ 57. At 12:35 a.m., the nurse observed Mrs. Fragoso with gasping pattern respirations and called a green code. Id. ¶ 58. The blood transfusion stopped at 12:39 a.m. but was then resumed. Id. At 12:50 a.m., Mrs. Fragoso was evaluated by the anesthesiologist, Dr. David A. Castrodad-Justiniano, because of cardiac arrest which

required assisted ventilation and intubation. Id. at 60. By that time, Mrs. Fragoso was undergoing CPR. Id. Mrs. Fragoso's demise was recorded at 1:00 a.m. Id. ¶ 61.

Plaintiff Idalis Landrau-Fragoso ("Ms. Landrau" or "Plaintiff"), Mrs. Fragoso's daughter, filed her *Complaint* against EPP and MedPro, among other co-defendants, on September 19, 2025 and an *Amended Complaint* on September 18, 2025. (Docket Nos. 1 and 5). Specifically, Plaintiff alleges that EPP violated the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, by failing to adequately evaluate and treat Mrs. Fragoso when she arrived at the Emergency Department. (Docket No. 5 ¶¶ 65-100). Plaintiff also asserts that EPP and other physician co-defendants committed medical malpractice in violation of Puerto Rico's General Tort Statute, P.R. Laws Ann. Tit. 31 § 10801. Id. ¶¶ 101-137. Accordingly, Plaintiff seeks compensation for both her personal emotional damages as well as Mrs. Fragoso's physical pain and suffering. Id. ¶¶ 144-145.

On June 30, 2026, Defendants filed a *Motion to Dismiss* Plaintiff's EMTALA claims on two grounds. (Docket No. 51). First, Defendants contend that Plaintiff's claims are time-barred because she filed her *Complaint* more than two years after the date of the violation as required by EMTALA. Id. Second, Defendants assert that EPP is not a "participating hospital" pursuant to EMTALA and

thus, Plaintiff cannot raise a private cause of action against it under said statute. Id.

Plaintiff filed an *Opposition to Motion to Dismiss* on August 31, 2026. (Docket No. 63). Ms. Landrau argues that equitable tolling should apply because although she received her mother's medical records on July 18, 2023 and acted diligently, it was not until December 29, 2023, that Plaintiff's expert concluded that Defendants incurred EMTALA violations, and it was not until June 26, 2024 that, through discovery in a prior case, Plaintiff learned that defendants were adhered contractually to EMTALA standards. Id. ¶¶ 9, 33, 35-36. Plaintiff further posits that EPP's argument that it is not a participating hospital under EMTALA cannot be resolved against Plaintiff at this juncture, given the well-plead allegations of the *Amended Complaint*. Id. ¶ 52. Moreover, Plaintiff notes that per the contract between Hospital Pavia and EPP, EPP must comply with EMTALA. Id. ¶ 50.

On September 8, 2026, Defendants filed a *Reply to Plaintiff's Opposition*. (Docket No. 68).

## II. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "[t]he sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st

Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). Then, the Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id.

## III. DISCUSSION

EMTALA was enacted "to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such a condition exists." del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, 19 (1st Cir. 2002). Accordingly, "EMTALA imposes two basic obligations on participating hospitals: (1) screening individuals who present themselves at the emergency department and (2) stabilizing victims of a detected medical emergency." Saltares v. Hosp. San Pablo Inc., 371 F. Supp. 2d 28, 31 (D.P.R. 2005) (citing 42 U.S.C. § 1395dd(a); López-Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir.1999).

Crucially, EMTALA provides that "[n]o action may be brought under this paragraph **more than two years after the date of the violation** with respect to which the action is brought." 42 U.S.C. § 1395dd(2)(C) (emphasis added). The clear language of the statute

"expressly defines when a claim accrues, i.e.—the date of the alleged violation." Saltares, 371 F. Supp. 2d at 33. Accordingly:

> EMTALA claims accrue not when the aggrieved party gained knowledge of the injury but when the actual violation took place. In other words, **the clock starts running the day after the patients went to the hospital and suffered the alleged violation, not when he or she learns of the injury as a result of the mistreatment.**

Id. (emphasis added).

It is uncontested that Plaintiff filed her EMTALA claims against Defendants on September 17, 2025, which is more than two years after the date of the alleged violation on March 16, 2023. Instead, Plaintiff contends that equitable tolling should apply. (Docket No. 63). "Equitable tolling is a sparingly invoked doctrine, used to excuse a party's failure to take an action in a timely manner, where such failure was caused by circumstances that are out of his hands[.]" Dawoud v. Holder, 561 F.3d 31, 36 (1st Cir. 2009) (citations omitted). The First Circuit has repeatedly held that equitable tolling is "reserved for exceptional cases." Chico-Velez v. Roche Prods., Inc., 139 F.3d 56, 59 (1st Cir. 1998); *see also* Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004).

To support her claim that equitable tolling applies, Plaintiff asserts that she received Mrs. Fragoso's medical records on July 18, 2023 and then diligently delivered said records to an expert witness, who prepared an expert report on December 29, 2023.

Id. at 9. Notably, Plaintiff initiated a prior legal action whereby she asserted EMTALA claims against Hospital Pavia but not EPP. Id.; *see also* Docket No. 41; Landrau-Fragoso et al v. Emergency Physician Providers, LLC et al, Civil No. 24-1123(JAG). Plaintiff explains that during said previous litigation, the contract between EPP and Hospital Pavia was not produced in discovery until June 26, 2024. Id. Accordingly, Plaintiff contends that her delay in filing EMTALA claims against EPP "was not ordinary ignorance of the law; it was the absence of expert-identified medical information necessary to recognize an EMTALA claim and lack of knowledge of the roles and EMTALA adherence and requirements imposed on EPP through her contract with Hospital Pavia." Id.

As a threshold matter, "EMTALA does not contain a tolling provision." Anthony Samora v. Centro Medico Del Turabo, Inc., No. CIVIL 16-1110CCC, 2017 WL 11569031, at *3 (D.P.R. Sept. 29, 2017). Furthermore, "neither the United States Supreme Court nor any U.S. Circuit Court of Appeals has decided whether equitable tolling applies to EMTALA." Borgos-Taboas v. HIMA San Pablo Hosp. Bayamon, 832 F. Supp. 2d 121, 125 (D.P.R. 2011). Courts in this district and beyond have repeatedly refused to apply an equitable tolling exception to EMTALA. *See* Saltares, 371 F. Supp. 2d at 35 (concluding that "tolling provisions should not be applied when, as here, they run counter to EMTALA's statutory goal of protecting patients rights to emergency medical care. Congressional intent is

clear, patients have two years to file suit regardless of any other legal action that may be brought. There is no need for tolling exceptions to apply"); Monrouzeau v. Asociacion del Maestro, 354 F. Supp. 2d 115, 119 (D.P.R.), aff'd sub nom. Monrouzeau v. Asociacion Del Hosp. Del Maestro, Inc., 153 F. App'x 7 (1st Cir. 2005) (finding "the fact that prior proceedings instituted by plaintiffs within the two-year period in another jurisdiction are ongoing is of no consequence to" determining the timeliness of an EMTALA claim filed in federal court); Vogel v. Linde, 23 F.3d 78, 80 (4th Cir. 1994) ("The blackletter rule, recognized by the Supreme Court since at least 1883, is that a statute of limitations runs against all persons, even those under a disability, unless the statute expressly provides otherwise."). Moreover, the First Circuit has previously found that a plaintiff's "late discovery of her federal cause of action" under EMTALA is not "an appropriate circumstance" to apply the "sparingly" used equitable tolling doctrine, especially where "there is no reason to think that [plaintiff's] late discovery of her federal cause of action was beyond her control." Monrouzeau v. Asociacion Del Hosp. Del Maestro, Inc., 153 F. App'x 7, 9 (1st Cir. 2005).

The Court agrees that under the plain language of EMTALA, equitable tolling does not apply. Even if that were not the case, Plaintiff has not established that extraordinary circumstances prevented her from filing suit. *See* Negron-Santiago v. San

Cristobal Hosp., 764 F. Supp. 2d 366, 371 (D.P.R. 2011) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("For those statutes of limitation to which equitable tolling applies, a litigant who seeks tolling must establish at least two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'"). Plaintiff had ample time to file a claim within EMTALA's statute of limitations after receiving the medical expert's opinion. Furthermore, despite not having the contract between Hospital Pavia and EPP, Plaintiff's Complaint in her previous litigation, Landrau-Fragoso et al v. Emergency Physician Providers, LLC et al, Civil No. 24-1123(JAG), alleged that EPP was "responsible and liable for its own negligence or that incurred by its medical staff, whose actions or omissions caused harm to Mrs. Fragoso and to Plaintiffs." Civil No. 24-1123(JAG), Docket No. 5 ¶ 16. This evinces that Plaintiff had some knowledge of EPP's existence and role in providing care. For these reasons, the Court concludes that Plaintiff's EMTALA claims against EPP are time-barred. The Court need not address whether EPP is a participating hospital under EMTALA.

## IV. CONCLUSION

In light of the above, Defendant's *Motion to Dismiss* at Docket No. 51 is **GRANTED.** Accordingly, Plaintiff's EMTALA claims against Defendants are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of September 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge